UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>　**Plaintiff,**<br><br>　v.<br><br>**REAL PROPERTY LOCATED AT 1188 RED FERN LANE, AUGUSTA, WEST VIRGINIA 26704,** *et al.*,<br><br>　**Defendants** *in rem*. | Civil Action No. 22-2596 (JEB) |

## MEMORANDUM OPINION

The United States brought this forfeiture action *in rem* against Defendant properties previously owned by Kevin Ward, who is deceased. The Government alleges that Ward "defrauded KIPP DC charter schools, in violation of U.S. law concerning wire fraud and theft related to programs receiving federal funds," ECF No. 17-1 (Pl. Mot. for DJ) at 3, "by submitting fraudulent invoices for computer products and related services," id. at 5, and then "us[ing] the funds to purchase property in West Virginia, art and sports memorabilia, and multiple vehicles." Id. at 2–3. As a result, the Government alleges that "[D]efendant properties are subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) as proceeds of violations of 18 U.S.C. §§ 666 and 1343." Id. at 2. The Clerk of Court entered default on August 21, 2023, see ECF Nos. 15 & 16, and Plaintiff now moves for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). See Pl. Mot. for DJ. Because the United States has sufficiently demonstrated that the allegations in its Amended Complaint warrant such a judgment, the Court will grant the Motion.

I.      Background

Given the default in this case, the Court accepts the facts alleged in the Government's Amended Complaint as true. KIPP DC is a charter-school network in the District of Columbia Public Schools system that "provides tuition-free public schooling for approximately 7,000 students" across 20 schools and eight campuses. See ECF No. 4 (Amend. Compl.), ¶ 11. From July 1, 2019, to June 30, 2021, KIPP DC received approximately $4.8 million in federal grants. Id. (approximately $1.4 million from July 1, 2019, to June 30, 2020, and $3.4 million from July 1, 2020, to June 30, 2021). In March 2020, when the District of Columbia ordered public schools to close at the onset of the COVID-19 pandemic, KIPP DC schools began transitioning to remote learning. Id., ¶ 13. To facilitate this, it "purchase[d] additional computer products, including laptops and tablets, and services for those products and for its network." Id.

Ward was the Senior Director of Technology for KIPP DC at this time and "was primarily responsible for the purchase and deployment" of computer products and services for KIPP DC. Id., ¶¶ 12–13. He remained in this role "until at least July 2021," sometime after which he took a leave of absence and later "left [KIPP DC's] employment." Id., ¶ 12.

The Government alleges that "[b]etween April 2020 and October 2021, Ward set up and controlled two shell companies, Tenret Tech and Vast Systems, DBA Tenret Tech." Pl. Mot. for DJ at 4. As the Senior Director of Technology at KIPP DC, "Ward engaged in a scheme to defraud KIPP DC by submitting fraudulent invoices for computer products and related services, none of which were provided by Tenret Tech" to KIPP DC. Id. at 5. Ward directed KIPP DC to pay a total of $2,229,418.97 to Tenret Tech for computer products and services. See Amend. Compl., ¶ 22. The separate invoices for these purchases were "functionally identical." Id. The invoices "listed 'Tenret Technology' as the vendor and KIPP DC as the 'Customer,'" id., ¶ 19,

2

"list[ed] Ward as the '[Point of Contact],' identif[ied] a 'Jonathan Humphrey' with Tenret Tech, and stat[ed] that the 'Date Needed' was 'ASAP' and the 'Ship Date' was 'TBD.'" Id., ¶ 22. Ward requested expedited payment for "many of the invoices" and directed some be coded as "Tech/COVID Expenses." Id. For example, three days prior to submitting an April 6, 2020, invoice, Ward "sent an email to other KIPP DC employees telling them to 'please be on the lookout'" for an invoice from Tenret Tech and stating, "We HAVE to get this paid and out ASAP so that they will ship." Id., ¶ 20.

KIPP DC used the "Anybill" payment system to process and pay Ward's invoices through computer servers located in Arizona and an Eagle Bank account accessed through a data center in Chantilly, Virginia. Id., ¶ 26. At Ward's direction, KIPP DC used Anybill to deposit the proceeds from each of Ward's invoices into one of two bank accounts: PNC account #9355 or Brex Treasury LLC account #4907. Id., ¶ 23. These accounts "were almost entirely funded with fraud proceeds." Id., ¶ 24. Bank records from these accounts reveal that the deposited KIPP DC funds were used to purchase Defendant properties. Id., ¶ 25; Pl. Mot. for DJ at 8. These include:

- Real Property Located at 1188 Red Fern Lane, Augusta, West Virginia, 26704;
- Real Property Located at 1278 Red Fern Lane, Augusta, West Virginia, 26704;
- 2020 Jeep Gladiator, vehicle identification number 1C6JJTBG8LL163065;
- 2021 Tesla Model S Plaid, vehicle identification number 5YJSA1E64MF451027;
- 2020 Taxa Cricket, vehicle identification number 4T9AC1519LH049070;
- 2020 Tesla Model Y, vehicle identification number 5YJYGDEF9LF009921;
- 2017 Alfa Romeo Giulia, vehicle identification number ZARFAEAV0H7519119;
- 2012 Subaru Impreza Sedan, vehicle identification number JF1GV8J67CL002287;

3

- 2018 Jeep Wrangler (JL Rubicon), vehicle identification number 1C4HJXFG5JW121456;

- 1990 Jeep Wrangler (YJ), vehicle identification number 2J4FY19E2LJ550200;

- 2015 Ducati Diavel, vehicle identification number ZDM13BSW4FB020780;

- 2020 Ford Super Duty F-450, vehicle identification number 1FT8W4DT9LEC71644;

- Assorted Art and Sports Memorabilia;

- 2018 Jeep Wrangler Unlimited Rubicon, vehicle identification number 1C4HJXFG5JW194407;

- 2020 Suzuki King All-Terrain Vehicle (ATV), vehicle identification number 5SAAK4D33L7101767; and

- Funds in the amount of $31,651.20 seized from Capital One Account #5399.

Amend. Compl., ¶ 2.

In November 2021, while "conducting a review of expenditures and inventory," KIPP DC officials "discovered that Tenret Tech had not provided any of the products and services purchased by KIPP DC." Id., ¶ 27. Some nine months later, on August 29, 2022, the Government filed a Complaint and obtained a warrant two days later. See ECF Nos. 1 (Compl.) & 2 (Warrant). On December 12, 2022, the Government filed a Verified Amended Complaint adding three additional properties as Defendants. The Court issued an amended warrant for those additional properties on January 24, 2023. See ECF No. 6. Pursuant to its notice obligations, the Government posted notice on the official government forfeiture site, www.forfeiture.gov, for more than 30 consecutive days beginning January 14, 2023, see ECF No. 12, and sent notice of the action via Federal Express mail and email to "all known potential

claimants." Pl. Mot. for DJ at 14–15.  It also posted notice on the real properties at 1188 Red Fern Lane, Augusta, West Virginia, and 1278 Red Fern Lane, Augusta, West Virginia, and recorded Notices of Lis Pendens with the relevant Clerk of Court as to those real properties.  Id. at 9–11.  Additionally, the Government sent notice to the personal representative of Ward's Estate, Chad Copeland, by Federal Express mail, and it also sent notice to Copeland's attorney by email and Federal Express.  Id. at 15.  Copeland was also personally served with notice as joint owner of the real properties located in West Virginia.  Id.

Two companies filed a claim as lienholder on two of Defendant properties.  Id. at 12.  Ford Motor Credit Company LLC filed a claim on the 2020 Ford Super Duty F-450, vehicle identification number 1FT8W4DT9LEC71644.  See ECF No. 7.  Capital One Auto Finance filed a claim on the 2018 Jeep Wrangler Unlimited Rubicon, vehicle identification number 1C4HJXFG5JW194407.  See ECF No. 8.  The Government entered into separate settlement stipulations to resolve those interests.  See Pl. Mot. for DJ at 12.  No other parties have claimed an interest or otherwise defended the action, so on August 21, 2023, the Clerk of Court entered default against the Defendant properties.  See ECF Nos. 15 & 16.  The Government now moves for default judgment and seeks forfeiture of Defendant properties.

**II.      Legal Standard**

"The determination of whether a default judgment is appropriate is 'committed to the sound discretion of the trial court.'"  Lu v. Lezell, 2013 WL 12183952, at *1 (D.D.C. July 19, 2013) (quoting Jackson v. Beech, 636 F.2d 831, 835 (D.C. Cir. 1980)).  A court must enter default when the "party against whom a judgment . . . is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."  Fed. R. Civ. P. 55(a).  "This form of relief is no less appropriate when the defendant in question is property," and "unless a claimant

5

properly intervenes to raise defenses to its forfeiture, the defendant property is deemed to have 'failed to plead or otherwise defend' against the allegations, and the Clerk of Court must enter default." United States v. All Assets, 330 F. Supp. 3d 150, 156 (D.D.C. 2018) (quoting Fed. R. Civ. P. 55(a)).

Once default is entered, the defendant "is deemed to admit every well-pleaded allegation in the complaint." Adkins v. Teseo, 180 F. Supp. 2d 15, 17 (D.D.C. 2001); see Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971), rev'd on other grounds sub nom. Hughes Tool Co. v. Trans World Airlines, Inc., 409 U.S. 363 (1973); see also 10A Wright & Miller, Fed. Prac. & Proc. Civ. § 2688.1 (4th ed.) (defaulting "defendant has no further standing to contest the factual allegations of plaintiff's claim for relief"). Nevertheless, "[m]odern courts are . . . reluctant to enter and enforce judgments unwarranted by the facts," Jackson, 636 F.2d at 835, and "a district court may still deny an application for default judgment where the allegations of the complaint, even if true, are legally insufficient to make out a claim." Gutierrez v. Berg Contracting, Inc., 2000 WL 331721, at *2 (D.D.C. Mar. 20, 2000); see also United States v. $1,0171,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd., 2018 WL 3949962, at *3 (D.D.C. June 29, 2018) ("the defendant['s] default notwithstanding, the plaintiff is entitled to a default judgement only if the complaint states a claim for relief") (alteration in original) (quoting Jackson v. Corr. Corp. of Am., 564 F. Supp. 2d 22, 26–27 (D.D.C. 2008)).

**III.    Analysis**

Before looking at the allegations in the Amended Complaint, the Court examines its jurisdiction and the sufficiency of notice to potential claimants.

A.      Jurisdiction

As a threshold matter, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1355(a), which provides that district courts "have original jurisdiction . . . of any action or proceeding for the recovery or enforcement of any . . . forfeiture, pecuniary or otherwise, incurred under any Act of Congress." It also has jurisdiction under 28 U.S.C. § 1345, which provides the district courts with jurisdiction over proceedings commenced by the United States. This Court similarly has *in rem* jurisdiction over Defendant properties pursuant to the seizure warrants issued by this Court and the Government's compliance with 18 U.S.C. § 985. See Amend. Compl., ¶¶ 7–8; Pl. Mot. for DJ at 16–17.

B.      Notice

A forfeiture action *in rem* arising from a federal statute is governed by Supplemental Rule G of the Federal Rules of Civil Procedure. Rule G(4)(a)(i) states that "[a] judgment of forfeiture may be entered only if the government has published notice of the action within a reasonable time after filing the complaint or at a time the court orders." The Government fulfilled this obligation by posting timely notice on an official government-forfeiture website, [www.forfeiture.gov](www.forfeiture.gov), and that notice was posted for at least 30 consecutive days, consistent with Supplemental Rule G(4)(a)(iv)(C). See Pl. Mot. for DJ at 15.

Plaintiff was also required to provide direct notice "to any person who reasonably appear[ed] to be a potential claimant on the facts known to [it]" and to send such notice "by means reasonably calculated to reach the potential claimant." Fed. R. Civ. P. Supp. R. G(4)(b)(i), (iii)(A). The Government met this requirement by sending notice as described above in Section I.

With the procedural requirements met, the Court may consider the substance of Plaintiff's claims.

C.      Merits

Supplemental Rule G also requires that the Amended Complaint "identify the statute under which the forfeiture action is brought" and "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(e)–(f). Plaintiff brings this action under the Civil Forfeiture section of Title 18, Crimes and Criminal Procedure. Specifically, it claims that Defendant properties are subject to forfeiture under 18 U.S.C. § 981(a)(1)(C), which permits forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of" certain specified offenses or of any offense constituting "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7). The definition of "specified unlawful activity" includes, as relevant here: (1) wire fraud, in violation of 18 U.S.C. § 1343, see 18 U.S.C. § 1956(c)(7)(A); and (2) theft or bribery concerning programs receiving federal funds, in violation of 18 U.S.C. § 666. See 18 U.S.C. § 1956(c)(7)(D). Alleging a scheme that fits within both definitions, the Government thus properly invoked 18 U.S.C. § 981(a)(1)(C) as the predicate for this forfeiture action.

Plaintiff argues that the facts alleged in the Amended Complaint "establish a reasonable belief that the [D]efendant properties are subject to forfeiture to the United States" because "the properties were purchased with proceeds of wire fraud and theft concerning programs receiving federal funds." Pl. Mot. for DJ at 17. The Court finds that Plaintiff has met its burden on both counts.

Wire fraud "requires proof of (1) a scheme to defraud; and (2) the use of an interstate wire communication to further the scheme." Ctr. for Immigr. Stud. v. Cohen, 410 F. Supp. 3d

183, 189 (D.D.C. 2019), aff'd, 806 F. App'x 7 (D.C. Cir. 2020) (citing United States v. Philip Morris USA, Inc., 566 F.3d 1095, 1116 (D.C. Cir. 2009); United States v. Maxwell, 920 F.2d 1028, 1035 (D.C. Cir. 1990)).  "Inherent in any scheme to defraud is falsehood of some kind." Id. (citation omitted).  The facts alleged in the Amended Complaint meet both requirements.  First, the Government outlines a scheme to defraud KIPP DC through fraudulent invoices submitted by Ward authorizing payment to his own shell companies in excess of $2.2 million. See Amend. Compl., ¶¶ 19–26.  The funds were not used to purchase any computer products or services for KIPP DC; instead, Ward used them to buy real property, personal vehicles, and sports memorabilia.  See id., ¶¶ 18, 30–69 (detailing purchase of Defendant properties).  Second, this scheme involved multiple interstate wire transactions through the Anybill payment system, which deposited funds from KIPP DC to Ward's shell companies through computer servers in Arizona and a data center located in Virginia.  Id., ¶ 26.  It also involved interstate wire communications after KIPP DC began discovering the fraud, where Ward — located in West Virginia — corresponded with KIPP officials located in the District of Columbia.  Id., ¶¶ 27–28.

       Theft or bribery involving programs receiving federal funds — a violation of 18 U.S.C. § 666 — requires (1) an individual who, "being an agent of an organization," (2) "embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property" valued at $5,000 or more, and (3) the "organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance."  18 U.S.C. § 666(a)(1)(A)(i), (b).  The facts alleged in the Amended Complaint satisfy all three criteria.  First, Ward was the Senior Director of Technology for KIPP DC when he submitted invoices for computer technology to his

9

shell companies. See Amend. Compl., ¶¶ 12, 22. Second, KIPP DC made 12 separate payments to Ward's shell companies totaling over $2.2 million, which Ward spent on personal vehicles and memorabilia rather than computer services for the charter school network. Id., ¶¶ 22–23, 25. And third, "[a]t all times relevant to this action, KIPP DC annually received more than $10,000 in Federal program grants." Id., ¶ 11.

The Court, accordingly, finds that Plaintiff has met its burden.

### IV. Conclusion

For the foregoing reasons, the Court will grant the Government's Motion for Default Judgment. A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date: September 20, 2023